719 S.E.2d 830

WEST VIRGINIA EMPLOYERS' MUTU-
AL INSURANCE COMPANY, d/b/a
Brickstreet Mutual Insurance Company,
d/b/a Brickstreet Insurance, Defendant
Below, Petitioner

v.

SUMMIT POINT RACEWAY AS-
SOCIATES, INC., Plaintiff
Below, Respondent.

No. 101414.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 20, 2011.

Decided Nov. 18, 2011.

Don C.A. Parker, Angela D. Herdman, Spillman, Thomas & Battle, Charleston, WV, for Petitioner.

William Richard McCune, Jr., Alex A. Tsiatsos, William Richard McCune, Jr. PLLC, Martinsburg, WV, Peter L. Chakmakian, Pe-

ter L. Chakmakian, L.C., Charles Town, WV, for Respondent.

Carte P. Goodwin, Benjamin B. Ware, Goodwin & Goodwin, LLP, Charleston, WV, for Amicus Curiae, The West Virginia Business and Industry Council.

Brent Kesner, Ernest G. Hentschel, II, Kesner, Kesner & Bramble, PLLC, Charleston, WV, for Amicus Curiae, TKS Contracting, Inc.; H. Talbott Tebay and H. Talbott Tebay DDS, Ltd.

Jill Cranston Bentz, Mychal Sommer Schulz, Jacob A. Manning, Dinsmore & Shohl, LLP, Jeffrey M. Wakefield, Erica M. Baumgras, Flaherty Sensabaugh & Bonasso, PLLC, Charleston, WV, for Amicus Curiae, West Virginia Insurance Federation.

DAVIS, Justice:

This case involves an appeal by West Virginia Employers' Mutual Insurance Company d/b/a BrickStreet Mutual Insurance Company (hereinafter referred to as "BrickStreet"), the petitioner herein and defendant below, from an "Agreed Judgment Order" entered by the Circuit Court of Jefferson County. The "Agreed Judgment Order" awarded to Summit Point Raceway Associates, Inc. (hereinafter referred to as "Summit Point"), the respondent herein and plaintiff below, the amount of $1,201,080.30 [1] in damages and attorney's fees and costs in relation to the circuit court's earlier order granting Summit Point's motion for partial summary judgment on its bad faith claim against BrickStreet, which claim arose from a deliberate intent action that had been filed against Summit Point by one of its employees. BrickStreet argues in this appeal that, in granting partial summary judgment, the circuit court erred by concluding that, pursuant to W. Va.Code § 23–4C–6 (2005) (Repl.Vol.2010), BrickStreet had an affirmative duty to make a commercially reasonable offer of coverage for deliberate intent actions to Summit Point. In addition, BrickStreet contends that the circuit court erred in reaching its alternate conclusion that the "Workers Compensation and Employers Liability Insurance Policy" that BrickStreet issued to Summit Point was ambiguous with regard to deliberate intent coverage, and finding, therefore, that, under the doctrine of reasonable expectations, the BrickStreet policy included coverage for deliberate intent actions. Summit Point, on the other hand, argues that the circuit court's challenged conclusions were not erroneous. Based upon our consideration of the parties' briefs, the briefs of various Amici Curiae,[2] the pertinent authorities, and the oral arguments presented, we now reverse the order of the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Summit Point is a West Virginia corporation that, in 2007, was insured under a "Workers Compensation and Employers Liability Insurance Policy" issued by BrickStreet.[3] Brandon Gregory, an employee of Summit Point, was injured on February 27, 2007, when he caught his hand in a wood planer. Mr. Gregory submitted a claim for workers' compensation under Summit Point's policy with BrickStreet, which claim was paid in full. In addition, Mr. Gregory filed a deliberate intent lawsuit against Summit Point alleging a violation of W. Va.Code § 23–4–2(d)(2)(ii) (2005) (Repl.Vol.2010). On

---

1. This figure represented the amount expended by Summit Point in settling the deliberate intent action filed against it by its employee, the costs incurred by Summit Point in its defense of that action, interest from the date the deliberate intent lawsuit was settled, and attorneys' fees incurred by Summit Point in bringing the instant action against BrickStreet.

2. This Court acknowledges the contribution of various Amicus Curiae who have filed briefs in this matter: The West Virginia Business & Industry Counsel and the West Virginia Insurance Federation, who each filed a brief in support of

Brickstreet; and TKS Contracting, Inc.; H. Talbott Tebay; and H. Talbott Tebay DDS, Ltd., who filed a joint brief in support of Summit Point. We express our appreciation for the participation of these Amici Curiae, and we have considered their views in our decision of this case.

3. Brickstreet replaced the West Virginia Insurance Commissioner as the administrator of the West Virginia Workers' Compensation Fund for the period between January 1, 2006, and December 31, 2008. See W. Va.Code § 23–2C–1 et seq.

April 14, 2008, Summit Point notified Brick-Street of the deliberate intent lawsuit and requested BrickStreet to assume the costs of Summit Point's defense. Summit Point received no response to its April 14th letter. Thereafter, Summit Point submitted two additional communications to BrickStreet: a second letter sent by certified mail on June 24, 2008, and a third letter sent on July 29, 2008, also requesting BrickStreet to assume its defense of the deliberate intent action filed by Mr. Gregory. BrickStreet responded to Summit Point on August 14, 2008, and denied coverage based upon a "West Virginia Intentional Injury Exclusion Endorsement" contained in the policy issued to Summit Point. Meanwhile, Summit Point had assumed the attorney's fees and costs associated with defending and ultimately settling the deliberate intent action.[4]

Thereafter, in July 2009, Summit Point filed a complaint against BrickStreet alleging claims of breach of contract, common law bad faith, statutory violations, and unfair trade and claim practices. During discovery, Summit Point filed a motion seeking partial summary judgment based upon its assertion that BrickStreet had a statutory obligation to make a "commercially reasonable" offer of coverage for "deliberate intent" claims and actions. In addition, Summit Point asserted

that language in the policy issued to it by BrickStreet that purported to exclude coverage for deliberate intent claims or actions was ambiguous. Consequently, Summit Point contended that BrickStreet was required to provide it with coverage for Mr. Gregory's deliberate intent lawsuit. By order entered May 4, 2010, the circuit court granted Summit Point's motion for partial summary judgment. By subsequent "Agreed Judgment Order" entered June 29, 2010, the circuit court awarded damages to Summit Point in the amount of $1,201,080.30, with interest accruing from May 15, 2010, until the judgment was paid in full. It is from this "Agreed Judgment Order" that BrickStreet now appeals.[5]

## II.

### STANDARD OF REVIEW

In this appeal we are asked to determine whether the circuit court erred in granting partial summary judgment in favor of Summit Point. Thus, we are guided by the well-established rule that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Furthermore, our case law has made clear

---

**4.** The Occupational Safety and Health Administration (hereinafter referred to as "OSHA") cited Summit Point for infractions involving improper training and energy control procedures in relation to Mr. Gregory's injury. Summit Point states that, after the circuit court ruled that the OSHA citations were dispositive, it was compelled to settle Mr. Gregory's lawsuit unfavorably.

**5.** Summit Point contends that this appeal is premature insofar as its claims against BrickStreet for common law bad faith and unfair trade practices remain pending in the circuit court. Summit Point acknowledges that, under Rule 54(b) of the West Virginia Rules of Civil Procedure, "[w]hen more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims" upon "an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." However, this Court held in Syllabus point 2 of *Durm v. Heck's Inc.,* 184 W.Va. 562, 401 S.E.2d 908 (1991), that

[w]here an order granting summary judgment to a party completely disposes of any

issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that "no just reason for delay" exists and "directi[ng] ... entry of judgment" will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect. Nevertheless, Summit Point observes that this Court has stated that the "[u]se of Rule 54(b), ... should not be routine and should be reserved only for the '"infrequent harsh case[.]"'" *Province [v. Province],* 196 W.Va. [473] 479, 473 S.E.2d [894] 900 [(1996)] (quoting Fed.R.Civ.P. 54 advisory committee's note.)." *Hubbard v. State Farm Indem. Co.,* 213 W.Va. 542, 550 n. 16, 584 S.E.2d 176, 184 n. 16 (2003). Given that the circuit court entered a judgment order awarding damages to Summit Point with respect to the claims for which it was granted partial summary judgment, the order is final as to those issues. Consequently, we find that this appeal meets the criteria set out in W. Va. R. Civ. P. 54(b) and Syllabus point 2 of *Durm v. Heck's Inc.*

that " '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. pt. 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992). With due regard for the foregoing principles, we will address the issues raised in this appeal.

## III.

## DISCUSSION

On appeal to this Court, BrickStreet argues that the circuit court erred in granting partial summary judgment to Summit Point by concluding that: (1) BrickStreet's obligations with respect to deliberate intent coverage under W. Va.Code § 23–4C–6 and Syllabus point 1 of *Bias v. Nationwide Mutual Insurance Co.,* 179 W.Va. 125, 365 S.E.2d 789 (1987), *superseded by statute as recognized in Luikart v. Valley Brook Concrete & Supply, Inc.,* 216 W.Va. 748, 613 S.E.2d 896 (2005) (per curiam), mandate an express offer of coverage; and (2) the policy language at issue was ambiguous.[6] We will address each of these issues in turn.

6. BrickStreet additionally argues that the circuit court committed clear error in holding that BrickStreet was responsible for the entire amount of damages without regard for the insurance policy limits. Due to the manner in which we resolve the issues raised in this appeal, we need not address this issue.

7. Article 4C of chapter 23 of the West Virginia Code is titled "Employers' Excess Liability Fund" and addresses deliberate intent benefits. *See Powroznik v. C. & W. Coal Co.,* 191 W.Va. 293, 294, 445 S.E.2d 234, 235 (1994) (commenting that "the Employers' Excess Liability Fund (EELF) created under W. Va.Code, 23–4C–1, *et seq.,* ... was designed to protect employers from excess damages arising out of deliberate intent cases") (footnote omitted).

8. W. Va.Code § 23–4C–2(a) (2003) (Repl.Vol. 2010) states that employers "may voluntarily elect to subscribe to the fund for [excess liability coverage]." In this respect, the provision states, in relevant part:

The Employers' Excess Liability Fund shall consist of premiums paid to it by employers

## A. *BrickStreet's Obligations under W. Va.Code § 23–4C–6 and Bias v. Nationwide Mutual Insurance Co.*

In granting partial summary judgment, the circuit court concluded that W. Va.Code § 23–4C–6 and this Court's decision in *Bias v. Nationwide Mutual Insurance Co.,* 179 W.Va. 125, 365 S.E.2d 789, required BrickStreet to expressly offer deliberate intent coverage in a commercially reasonable manner and to obtain a knowing and informed waiver from any insured who did not purchase the coverage. The circuit court further concluded that BrickStreet failed to make such an express offer and to obtain a knowing and informed waiver. Therefore, the circuit court concluded that the coverage was included in Summit Point's policy by operation of law.

BrickStreet argues that its obligations under W. Va.Code § 23–4C–6 were identical to the Excess Employer Liability Fund[7] obligations of its predecessor, the Workers' Compensation Commission (hereinafter referred to as "the WCC"), which were merely to make the coverage available to those employers who voluntarily elected to purchase the same. *See* W. Va.Code §§ 23–4C–2(a) and –4 (2003) (Repl.Vol.2010).[8] BrickStreet submits that there was no statutory mandate to make an offer as required by *Bias.*[9] Final-

who may *voluntarily elect* to subscribe to the fund for coverage of potential liability to any person who may be entitled to any excess of damages over the amount received or receivable under this chapter.

W. Va.Code § 23–4C–2(a) (emphasis added). Similarly, W. Va.Code § 23–4C–4 (2003) (Repl. Vol.2010) states, in relevant part:

For the purpose of creating the Employers' Excess Liability Fund, each employer who *elects* to subscribe to the fund shall pay premiums based upon and being a percentage of the payroll of the employer determined by the board of managers.... 

(Emphasis added).

9. Furthermore, BrickStreet notes that, in the case of *Luikart v. Valley Brook Concrete & Supply, Inc.,* 216 W.Va. 748, 613 S.E.2d 896 (2005) (per curiam), this Court recognized that *Bias* has been superseded by statute. *Luikart* involved "stop gap" coverage, which is a policy that "exists to cover 'claims made against a business by injured employees whose claims are not generally compensable under the workers' compensation system.' " 216 W.Va. at 754, 613 S.E.2d at

ly, BrickStreet contends that the effect of the circuit court's ruling could arguably be to extend "deliberate intent" insurance coverage to 30,000 employers in the State of West Virginia who have not chosen such coverage and have not paid for such coverage. Thus, allowing the ruling to stand would lead to an absurd result that the West Virginia Legislature could not have conceived or intended.

Summit Point argues in response that the circuit court correctly found that Brick-Street's failure to make a commercially reasonable offer of deliberate intent coverage resulted in that coverage's inclusion in Summit Point's policy as a matter of law. Summit Point submits that the language of W. Va.Code § 23–4C–6, specifically the phrase "shall offer," requires BrickStreet to make a specific, commercially reasonable offer of deliberate intent coverage under this Court's holding in Syllabus point 1 of *Bias*.

Furthermore, Summit Point contends that BrickStreet is a private company with statutorily mandated obligations that exceed what was required of the WCC, and BrickStreet's argument to the contrary must fail because it ignores the plain language of W. Va.Code § 23–4C–6. Reasoning that BrickStreet was a newly created private entity with a near monopoly, Summit Point asserts that Brick-Street had no right to ignore the plain mandate of the *Bias* opinion. According to Summit Point, *Bias* applies to BrickStreet as it applies to every other insurer and every other statutorily mandated offer of insurance insofar as Syllabus point 1 of *Bias* was stated in general terms · and was not limited to uninsured or underinsured motorist coverage, even though such coverage was the context in which the *Bias* case was decided.

We begin our analysis with a review of Syllabus point 1 of *Bias*. As noted by Summit Point, Syllabus point 1 of *Bias* is stated in general terms and does not limit its application to uninsured or underinsured motorist coverage: "[w]here an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed." 179 W.Va. 125, 365 S.E.2d 789. Under the express terms of Syllabus point 1 of *Bias*, the obligations set out therein arise only "[w]here an offer of optional coverage is required by statute." *Id.* Thus, in order to resolve the issue raised in this appeal, we must determine whether the relevant statute, W. Va.Code § 23–4C–6, requires "an offer of optional coverage." *Id.*

■ When this Court is asked to determine the meaning of a statute, we must be mindful that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Accordingly, we must examine W. Va.Code § 23–4C–6 to determine whether the Legislature intended to require the type of offer set out by this Court in *Bias*. W. Va.Code § 23–4C–6 states:

> Upon the termination of the commission, all assets, obligations and liabilities resulting from this article are transferred to the successor of the commission. Thereafter, the company [BrickStreet] shall offer insurance to provide for the benefits required by this article until at least the thirtieth day of June, two thousand eight. The State Treasurer and all other departments, agencies and boards shall cooperate to ensure this novation occurs in an expedient and orderly fashion.

Before attempting to ascertain the legislative intent reflected in the foregoing statute, we note that "[j]udicial interpretation of a statute is warranted only if the statute is ambiguous. . . ." Syl. pt. 1, in part, *Ohio Cnty. Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983). "A statute that is ambiguous must be construed before it can be

902 (quoting *Erie Ins. Prop. & Cas. Co. v. Stage Show Pizza, JTS, Inc.*, 210 W.Va. 63, 68, 553 S.E.2d 257, 262 (2001)). The *Luikart* Court observed that "an insurer has no statutory duty to offer stop gap insurance coverage." 216 W.Va. at 754, 613 S.E.2d at 902 (footnote omitted). *Luikart* is not instructive to our decision in the instant case, however, because *Luikart* did not involve BrickStreet and its obligations under W. Va.Code § 23–4C–6. Furthermore, we note that *Bias* has been superseded by statute only as it pertains to uninsured and underinsured motorist coverage.

applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). Conversely, " '[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.' Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970)." Syl. pt. 4, *Syncor Int'l Corp. v. Palmer*, 208 W.Va. 658, 542 S.E.2d 479 (2001).

The first sentence of W. Va.Code § 23–4C–6 is straightforward in transferring the assets, obligations and liabilities resulting from article 4C to Brickstreet upon termination of the WCC. As we noted previously, article 4C of chapter 23 is entitled "Employers' Excess Liability Fund" and addresses deliberate intent benefits. *See Powroznik v. C. & W. Coal Co.*, 191 W.Va. 293, 294, 445 S.E.2d 234, 235 (1994) (commenting that "the Employers' Excess Liability Fund (EELF) created under W. Va.Code, 23–4C–1, *et seq.*, . . . was designed to protect employers from excess damages arising out of deliberate intent cases").[10] Thus, the first sentence of W. Va.Code § 23–4C–6 plainly transfers to BrickStreet the WCC's former obligations and liabilities related to deliberate intent benefits.

■ Although the language of the first sentence of W. Va.Code § 23–4C–6 is plain, we find that an ambiguity arises in the second sentence, which states: "[t]hereafter, the company [BrickStreet] *shall offer* insurance to provide for the benefits required by this article until at least the thirtieth day of June, two thousand eight." (Emphasis added). As

demonstrated by the differing interpretations given this phrase by the parties to this appeal, its intended meaning is not abundantly clear.[11] Therefore, we must endeavor to construe the phrase and afford it the definition intended by the Legislature. "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W.Va. 373, 386, 52 S.E.2d 740, 747 (1949).

■ Notably, the phrase "shall offer" is not defined in chapter 23 of the West Virginia Code. "In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meaning." Syl. pt. 3, in part, *Ohio Cellular RSA Ltd. P'ship v. Board of Pub. Works of West Virginia*, 198 W.Va. 416, 481 S.E.2d 722 (1996) (internal quotations and citations omitted). *Accord Coordinating Council for Indep. Living, Inc. v. Palmer*, 209 W.Va. 274, 281, 546 S.E.2d 454, 461 (2001). Thus, we consider the common meaning of the terms "shall" and "offer."

■ The meaning of the term "shall" is settled in our law:

"It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syllabus Point

10. *See also* W. Va.Code § 23–4C–1 (1995) (Repl. Vol.2010) ("The purpose of this article is to permit the establishment of a system to provide insurance coverage for employers subject to this chapter who may be subjected to liability under section two [§ 23–4–2], article four of this chapter, for any excess of damages over the amount received or receivable under this chapter."). W. Va.Code § 23–4–2 (2005) (Repl.Vol.2010) is entitled "Disbursement where injury is self-inflicted or intentionally caused by employer; legislative declarations and findings; 'deliberate intention' defined." W. Va.Code § 23–4–2 sets out, *inter alia*, the requirements for a "deliberate intent" cause of action. *See Riffle v. C.J. Hughes Constr. Co.*, 226 W.Va. 581, 584 n. 2, 703 S.E.2d 552, 555 n. 2 (2010) ("As a general matter, West Virginia's workers' compensation laws provide statutory immunity for employers from tort actions brought by their employees. *Tolliver v. The*

*Kroger Company*, 201 W.Va. 509, 520, 498 S.E.2d 702, 713 (1997). A plaintiff can overcome this statutory immunity if he can demonstrate that his employer acted with ['a consciously, subjectively and deliberately formed intention'] as that phrase is defined in the 'deliberate intent statute,' W. Va.Code § 23–4–2(d)(2)(i). Alternatively, an employee can bring a 'deliberate intent' claim if he [or she] can establish the . . . five factors . . . set forth in . . . W. Va.Code § 23–4–2(d)(2)(ii) (2003).").

11. We note, however, that " '[t]he fact that parties disagree about the meaning of a statute does not itself create ambiguity or obscure meaning.' *T. Weston, Inc. v. Mineral County*, 219 W.Va. 564, 568, 638 S.E.2d 167, 171 (2006) (citation omitted)." *State v. Gibson*, 226 W.Va. 568, 571, 703 S.E.2d 539, 542 (2010).

1, *Nelson v. West Virginia Public Employees Insurance Board*, 171 W.Va. 445, 300 S.E.2d 86 (1982).

Syl. pt. 1, *E.H. v. Matin*, 201 W.Va. 463, 498 S.E.2d 35 (1997).

Ascertaining the Legislature's intended meaning of the term "offer" is more difficult. This is so because the dictionary definitions of the term support the interpretations tendered by both BrickStreet and Summit Point. Brickstreet contends that the term "offer" should be read to mean "make available." Brickstreet's view represents a "common, ordinary and accepted" use of the term. Syl. pt. 3, in part, *Ohio Cellular RSA Ltd. P'ship v. Board of Pub. Works of West Virginia*, 198 W.Va. 416, 481 S.E.2d 722. For example, one dictionary definition of the term includes "to make available: AFFORD; *esp:* to place (merchandise) on sale." *Merriam–Webster's Collegiate Dictionary* 861 (11th ed.2005). *See also Random House Webster's Unabridged Dictionary* 1344 (2d ed.1998) (defining "offer," in part, as "to present for sale" and "the condition of being offered; *an offer for sale*"); *Webster's Third New International Dictionary* 1566 (1970) (providing definition of "offer" that includes "to make available or accessible: SUPPLY, AFFORD ... *esp*: to place (merchandise) on sale"). These same dictionaries, however, provide alternative definitions that similarly support the circuit court's conclusion, with which Summit Point agrees, that BrickStreet was required to make an express offer of the kind that would trigger application of this Court's holding in *Bias. See Merriam–Webster's Collegiate Dictionary* 861 (11th ed.2005) (providing definition of the term "offer" that includes "to present for acceptance or rejection"); *Random House Webster's Unabridged Dictionary* 1344 (2d ed.1998) (including in definition of the term "offer," "to present for acceptance or rejection"); *Webster's Third New International Dictionary* 1566 (1970) (defining "offer," in part, as "to present for acceptance or rejection: hold out"). An examination of the common usage of the term "offer," therefore, does not clarify the type of "offer" the Legislature intended to require under W. Va.Code § 23–4C–6.

Because our consideration of common usage has not given direct guidance as to how the Legislature intended W. Va.Code § 23–4C–6 to be applied, *i.e.,* whether the Legislature intended to impose a *Bias*–type offer, we find it useful to compare the statute at issue in *Bias* with W. Va.Code § 23–4C–6.

The Court in *Bias* examined a version of W. Va.Code § 33–6–31(b), which pertains to uninsured and underinsured motorist coverage, that was enacted in 1982. A review of this statute demonstrates that, unlike the mandate of W. Va.Code § 23–4C–6 that BrickStreet "shall offer" deliberate intent coverage, W. Va.Code § 33–6–31(b) (1982) (Repl.Vol.1988) contains a more detailed directive to insurers with regard to the coverages that they were therein being required to provide, and the manner in which their insureds were to be advised of such coverages.[12] In this regard, W. Va.Code § 33–6–

---

**12.** W. Va.Code § 33–6–31(b) (1982) (Repl.Vol. 1988) stated in full:

(b) Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two [§ 17D–4–2], article four, chapter seventeen-d of the Code of West Virginia, as amended from time to time: *Provided, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle* up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident, *unless the insured waives such coverage in writing;* and the writing signed by the insured shall contain the following language: "The commissioner of the department of motor vehicles of the State of West Virginia has determined that there are many operators of motor vehicles from in and out of the state who do not have liability insurance. For this reason uninsured motorist coverage is recommended to each and every West Virginian": Provided, however, That such endorsement or provisions may exclude the first three hundred dollars of property damage resulting from the negligence of an

31(b) expressly required the "policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle" up to certain specified limits, "unless the insured waives such coverage in writing." W. Va.Code § 33–6–31(b). The statute went on to state,

> [p]rovided further, [t]hat such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured.

> uninsured motorist: *Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured.* "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either (i) less than limits the insured carried for underinsured motorists' coverage, or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorist's coverage.
> (Emphasis added).

**13.** W. Va.Code § 33–6–31d (1993) (Repl.Vol. 2011) provides:

> (a) Optional limits of uninsured motor vehicle coverage and underinsured motor vehicle coverage required by section thirty-one of this article shall be made available to the named insured at the time of initial application for liability coverage and upon any request of the named insured on a form prepared and made available by the Insurance Commissioner. The contents of the form shall be as prescribed by the commissioner and shall specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such coverage available and the number of vehicles

W. Va.Code § 33–6–31(b). It was in the context of these fairly detailed requirements that the *Bias* Court rendered its holding that "[w]here an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed." Syl. pt. 1, *Bias v. Nationwide Mut. Ins. Co.,* 179 W.Va. 125, 365 S.E.2d 789.

What we find most enlightening, however, is the fact that, following this Court's holding in *Bias,* the Legislature adopted W. Va.Code § 33–6–31d (1993) (Repl.Vol.2011) and, in an apparent endorsement of the *Bias* opinion, provided even more detailed instructions with respect to how optional uninsured and underinsured coverages are to be offered and further provided that "a form prepared and made available by the Insurance Commissioner" be used for this purpose.[13] W. Va. Code § 33–6–31d(a).

> which will be subject to the coverage. The form shall be made available for use on or before the effective date of this section. The form shall allow any named insured to waive any or all of the coverage offered.
> (b) Any insurer who issues a motor vehicle insurance policy in this state shall provide the form to each person who applies for the issuance of such policy by delivering the form to the applicant or by mailing the form to the applicant together with the applicant's initial premium notice. The applicant shall complete, date and sign the form and return the form to the insurer within thirty days after receipt thereof. No insurer or agent thereof is liable for payment of any damages applicable under any optional uninsured or underinsured coverage authorized by section thirty-one of this article for any incident which occurs from the date the form was mailed or delivered to the applicant until the insurer receives the form and accepts payment of the appropriate premium for the coverage requested therein from the applicant: Provided, That if prior to the insurer's receipt of the executed form the insurer issues a policy to the applicant which provides for such optional uninsured or underinsured coverage, the insurer shall be liable for payment of claims against such optional coverage up to the limits provided therefor in such policy. The contents of a form described in this section which has been signed by an applicant shall create a presumption that such applicant and all named insureds received an effective offer of the optional coverages described in this section and that such applicant exercised a knowing and intelligent election or rejection, as the case may be, of such offer as

From the Legislature's enactment of W. Va.Code § 33–6–31d, we can glean that, when the Legislature intends to require an insurer to make a *Bias*-type express offer of optional coverage and to ensure that any rejection of the same by the insured was knowing and informed, the Legislature will include such details in the governing statute.

Turning to the statute presently at issue, we note that W. Va.Code § 23–4C–6 was enacted in 2005, which was several years after *Bias* and after the Legislature's enactment of W. Va.Code § 33–6–31d. Because the Legislature chose not to include the same detailed guidance in W. Va.Code § 23–4C–6 as it previously had included in W. Va.Code § 33–6–31d, we must assume that it did not intend to require the same type of express offer of optional coverage. *Cf.* Syl. pt. 5, *Pullano v. City of Bluefield,* 176 W.Va. 198, 342 S.E.2d 164 (1986) (" 'The Legislature, when it enacts legislation, is presumed to know its prior enactments.' Syllabus Point 12, *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953)."); Syl. pt. 2, *Butler v. Rutledge,* 174 W.Va. 752, 329 S.E.2d 118 (1985) (" 'The Legislature must be presumed to know the language employed in former acts, and, if in a subsequent statute on the same subject it uses different language in the same connection, the court must presume that a change

in the law was intended.' Syl. pt. 2, *Hall v. Baylous,* 109 W.Va. 1, 153 S.E. 293 (1930).").

■ Based upon the foregoing, we now hold that, in its enactment of W. Va.Code § 23–4C–6 (2005) (Repl.Vol.2010), the Legislature did not impose upon the West Virginia Employers' Mutual Insurance Company d/b/a BrickStreet Mutual Insurance Company, the duty to make to its insureds an express, commercially reasonable offer of coverage for deliberate intent actions, as set out in W. Va.Code § 23–4C–1 *et seq.*, or to obtain a voluntary waiver of such coverage. Instead, the Legislature merely required that such coverage be made available to insureds upon their voluntary request.

■ Applying this holding to the instant matter, we find that BrickStreet was not required to affirmatively make a commercially reasonable offer of deliberate intent coverage to Summit Point or to obtain a waiver of the same. Instead, BrickStreet merely had to make such coverage available to its insureds. BrickStreet fulfilled this duty by sending two letters to its customers. In the first letter, dated January 2, 2006, BrickStreet explained to its customers that,

> [i]f you previously purchased Employers' Excess Liability Fund coverage ... from the Workers' Compensation Commission, BrickStreet is automatically providing you

specified in the form. Such election or rejection shall be binding on all persons insured under the policy.

(c) Any insurer who has issued a motor vehicle insurance policy in this state which is in effect on the effective date of this section shall mail or otherwise deliver the form to any person who is designated in the policy as a named insured. A named insured shall complete, date and sign the form and return the form to the insurer within thirty days after receipt thereof. No insurer or agent thereof is liable for payment of any damages in any amount greater than any limits of such coverage, if any, provided by the policy in effect on the date the form was mailed or delivered to such named insured for any incident which occurs from the date the form was mailed or delivered to such named insured until the insurer receives the form and accepts payment of the appropriate premium for the coverage requested therein from the applicant. The contents of a form described in this section which has been signed by any named insured shall create a presumption that all named insureds under

the policy received an effective offer of the optional coverages described in this section and that all such named insured exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form. Such election or rejection is binding on all persons insured under the policy.

(d) Failure of the applicant or a named insured to return the form described in this section to the insurer as required by this section within the time periods specified in this section creates a presumption that such person received an effective offer of the optional coverages described in this section and that such person exercised a knowing and intelligent rejection of such offer. Such rejection is binding on all persons insured under the policy.

(e) The insurer shall make such forms available to any named insured who requests different coverage limits on or after the effective date of this section. No insurer is required to make such form available or notify any person of the availability of such optional coverages authorized by this section except as required by this section.

substantially similar coverage through endorsements to your policy. If the WV Broad Form Employers Liability Endorsement ... [is] not listed on your Information Pages, then [this] coverage[ ] [is] not provided.

If you wish to apply for ... West Virginia Broad Form Employers Liability coverage, you may do so by submitting to us the application found on our website, or writ[ing] to us at the above address, or call us ... to receive an application.

In a subsequent letter, dated April 12, 2006, BrickStreet again explained that

WV Broad Form Employers Liability was formerly known as Employers' Excess Liability Fund Coverage. It provides coverage for West Virginia Annotated Code § 23–4–2(d)(2)(ii) for an additional charge.

....

... the coverage[ ] listed above require[s] underwriting approval prior to extending the coverage. We realize that this information may be complex and may require more detail, therefore, we encourage you to contact your personal underwriter ... with any questions you may have and visit our website ... for additional information related to our company.

Based upon the foregoing, we find that BrickStreet met its obligation under W. Va. Code § 23–4C–6 to make deliberate intent coverage, otherwise identified as WV Broad Form Employers Liability coverage, avail-able to Summit Point. Accordingly, the circuit court erred in granting partial summary judgment in favor of Summit Point on this ground.[14]

### B. Policy Language

An alternate ground relied upon by the circuit court to grant partial summary judgment in favor of Summit Point was that, due to an ambiguity in the policy issued to Summit Point, deliberate intent coverage was included in the policy under the doctrine of reasonable expectations.[15]

BrickStreet argues that the plain meaning of the insurance policy demonstrates that coverage does not apply to any deliberate intent claims or actions. Furthermore, BrickStreet notes that the West Virginia Intentional Injury Exclusion Endorsement included with the policy plainly excluded deliberate intent coverage.[16] BrickStreet contends that the language of the West Virginia Intentional Injury Exclusion Endorsement plainly and unambiguously states that the "deliberate intent" actions arising out of W. Va.Code § 23–4–2 are not covered. BrickStreet argues further that the circuit court incorrectly relied on the *title* of Part Two of the Employers Liability Insurance Coverage to conclude that the policy is ambiguous, when the court should have relied on the plain meaning of the policy language. Finally, BrickStreet argues that the circuit

---

**14.** We note that BrickStreet automatically provided deliberate intent coverage to its customers who had previously purchased Employers' Excess Liability Fund coverage from the WCC. It is undisputed that Summit Point did not have such coverage, and Summit Point never paid any premiums to obtain such coverage.

**15.** This Court has previously explained that,

[w]ith respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

Syl. pt. 8, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987), *abrogated on other grounds by Potesta v. United States Fid. & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998).

**16.** The West Virginia Intentional Injury Exclusion Endorsement states, in relevant part:

F. Payments You Must Make
You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:
1. of your serious and willful misconduct, or arising out of West Virginia Annotated Code § 23–4–2.
C. Exclusions
This insurance does not cover
5. Bodily injury caused by your intentional, malicious or deliberate act, whether or not the act was intended to cause injury to the employee injured, or whether or not you had actual knowledge that an injury was certain to occur, or any bodily injury for which you are liable arising out of West Virginia Annotated Code § 23–4–2.

court erred in applying the reasonable expectations doctrine, because that doctrine does not apply where the policy language is not ambiguous.

Summit Point argues in reply that the circuit court correctly found that deliberate intent coverage was included in Summit Point's policy as a result of ambiguities in the policy, because ambiguities are always construed against the insurer. Furthermore, the ambiguity permitted Summit Point to reasonably expect deliberate intent coverage. Summit Point additionally argues that the policy exclusion merely referred to W. Va. Code § 23–4–2 without identifying the specific subsection. Because the exclusion did not include the five elements of W. Va.Code § 23–4–2(d)(2)(ii), Summit Point argues that it was insufficient, ambiguous, and, because the language referred to "willful," "intentional," "malicious," and "deliberate" acts, it allowed an employer to believe that it excluded coverage only for causes of action arising under W. Va.Code § 23–4–2(d)(2)(i).

 It is well established that " '[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syl. pt. 2, *West Virginia Fire & Cas. Co. v. Stanley*, 216 W.Va. 40, 602 S.E.2d 483 (2004). In other words, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." *Horace Mann Ins. Co. v. Adkins*, 215 W.Va. 297, 301, 599 S.E.2d 720, 724 (2004) (internal quotations and citation omitted).

 We have reviewed the policy at issue and conclude that, pursuant to the language contained therein, there is plainly no coverage for deliberate intent actions. First, we note that "Part One" of the policy, which provides workers' compensation insurance, is clear that it does not provide coverage for deliberate intent actions by stating:

F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct, or arising out of West Virginia Annotated Code § 23–4–2;

. . . .

3. you fail to comply with a health or safety law or regulation. . . .

In addition, part two of the policy expressly states that "[t]his employers liability insurance applies to bodily injury *by accident*," and specifies that:

The damages we [BrickStreet] will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as an employer.

(Emphasis added). Nothing in the plain language quoted above leads to a reasonable conclusion that deliberate intent coverage is included in this policy. Finally, we note that the policy includes a "West Virginia Intentional Injury Exclusion Endorsement" that states, in relevant part:

C. Exclusions

This insurance does not cover

5. Bodily injury caused by your intentional, malicious or deliberate act, whether or not the act was intended to cause injury to the employee injured, or whether or not you had actual knowledge that an injury was certain to occur, or any bodily injury for which you are liable arising out of West Virginia Annotated Code § 23–4–2.

This Court has previously held that

"[a]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." Syl. Pt. 10, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998).

Syl. pt. 6, *Webster Cnty. Solid Waste Auth. v. Brackenrich & Assoc., Inc.*, 217 W.Va. 304, 306, 617 S.E.2d 851, 853 (2005). The above-quoted exclusion was conspicuous, plain, clear, and obvious in excluding coverage for deliberate intent actions. By stating that the insurance did not cover "any bodily injury for which you are liable arising out of West Virginia Annotated Code § 23–4–2," it is clear that there was no coverage for deliberate intent liability arising from either W. Va.Code § 23–4–2(d)(2)(i) [17] or W. Va.Code § 23–4–2(d)(2)(ii). [18]

For the foregoing reasons, we conclude that the circuit court erred in concluding that the policy at issue was ambiguous and therefore resulted in deliberate intent coverage being included in the policy under the doctrine of reasonable expectations. Because the policy language is plain, and the plainly worded exclusion of deliberate intent coverage was conspicuous, plain, clear, and obvious, the policy simply did not provide coverage for deliberate intent liability, and the circuit court's grant of partial summary judgment on this ground was in error.

## IV.

## CONCLUSION

For the reasons stated in the body of this opinion, we reverse the order of the Circuit

---

17. W. Va.Code § 23–4–2(d)(2)(i) states:

(2) The immunity from suit provided under this section and under sections six [§ 23–2–6] and six-a [§ 23–2–6a], article two of this chapter may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". This requirement may be satisfied only if:

(i) It is proved that the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of: (A) Conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct[.]

18. W. Va.Code § 23–4–2(d)(2)(ii) provides that:

(2) The immunity from suit provided under this section and under sections six [§ 23–2–6] and six-a [§ 23–2–6a], article two of this chapter may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". This requirement may be satisfied only if:

. . . .

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

Court of Jefferson County granting partial summary judgment in favor of Summit Park, as well as the circuit court's "Agreed Judgment Order" granting damages for the same.

Reversed.