# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2015 Term

**FILED**

October 7, 2015

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 15-0424

_____

STATE OF WEST VIRGINIA ex rel.,
NATIONWIDE MUTUAL INSURANCE COMPANY,
Petitioner

v.

THE HONORABLE RONALD E. WILSON,
Judge of the Circuit Court of Ohio County;
TRAVIS NELSON;
TERESA NELSON; and
FRED HLAD, individually and d/b/a
ALLSTATE CONSTRUCTION,
Respondents

_____

## PETITION FOR WRIT OF PROHIBITION

## WRIT GRANTED

_____

Submitted: September 22, 2015
Filed: October 7, 2015

Donna S. Quesenberry, Esq.          Brian A. Ghaphery, Esq.
Maria Marino Potter, Esq.           Ghaphery Law Offices, PLLC
MacCorkle Lavender, PLLC            Wheeling, West Virginia
Charleston, West Virginia          Counsel for Respondents Travis and
Counsel for the Petitioner         Teresa Nelson

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970).

2. "In determining whether under a liability insurance policy an occurrence was or was not an 'accident'—or was or was not deliberate, intentional, expected, desired, or foreseen—primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue." Syl., *Columbia Cas. Co. v. Westfield Ins. Co.*, 217 W.Va. 250, 617 S.E.2d 797 (2005).

3. "Defective workmanship causing bodily injury or property damage is an 'occurrence' under a policy of commercial general liability insurance." Syl. Pt. 6, in part, *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 231 W.Va. 470, 745 S.E.2d 508 (2013).

4. "[I]ncluded in the consideration of whether the insurer has a duty to defend is whether the allegations in the complaint . . . are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policies." Syl. Pt. 3, in part, *Bruceton Bank v. U.S. Fid. & Guar. Ins. Co.*, 199 W.Va. 548, 486 S.E.2d 19 (1997).

**Justice Ketchum:**

Petitioner, Nationwide Mutual Insurance Company ("Nationwide") seeks a writ of prohibition to halt enforcement of a March 16, 2015, order of the Circuit Court of Ohio County. The circuit court denied Nationwide's request for declaratory relief and found that its commercial general liability ("CGL") policy with its insured (Mr. Fred Hlad) requires it to provide coverage, defend, and "indemnify [Mr. Hlad] for *any damages that may be recovered*" in the underlying lawsuit. (Emphasis added). The underlying lawsuit arises out of Mr. Hlad's agreement to construct a house for the Respondents, Travis and Teresa Nelson. The Nelsons seek damages from Mr. Hlad for breach of contract, various intentional tort claims, and negligence in constructing their house.

Nationwide asserts that the circuit court erred by finding that the CGL policy provided coverage to Mr. Hlad for any damages that may be recovered in the underlying lawsuit. Upon review, we find that most of the claims asserted by the Nelsons did not trigger coverage under the CGL policy, and the claims that did trigger coverage were precluded by clear and unambiguous exclusions. Accordingly, we find that Nationwide has no duty to defend or indemnify Mr. Hlad in the underlying lawsuit, and we grant Nationwide's requested writ of prohibition and halt enforcement of the circuit court's March 16, 2015, order.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

In July 2009, Mr. Hlad signed a contract to build the Nelsons a house. The agreement provided that Mr. Hlad would complete work on the house by November 2009, and that he would withdraw funds from the Nelsons' construction loan account to pay for supplies and labor.

However, the contractual relationship between the Nelsons and Mr. Hlad deteriorated. The Nelsons allege that Mr. Hlad withdrew $257,200 from their construction loan account and then failed to pay various suppliers and subcontractors. They also contend that Mr. Hlad lied to his suppliers and subcontractors about the reason for his non-payment, falsely stating that the Nelsons did not provide him money. In addition, the Nelsons claim that Mr. Hlad charged them overages without explanation. Finally, the Nelsons maintain that Mr. Hlad missed his deadline to complete construction of the house and that the work he performed was done negligently.

As a result, the Nelsons contend that they suffered damages in excess of $257,200, which include the amount Mr. Hlad withdrew from their construction loan account without performing on the contract, subcontractors' liens placed on the Nelsons' house due to Mr. Hlad failing to pay them, damage to the Nelsons' reputation due to Mr. Hlad's defamatory statements, and damage to the structural integrity of the house caused by Mr. Hlad's negligent work.

To recover these damages, the Nelsons sued Mr. Hlad in Ohio County (the underlying lawsuit). Their amended complaint contained nine counts asserting the

2

following causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing;[1] (3) defamation; (4) unfair and deceptive practices under West Virginia Code § 46A-6-104; (5) fraud and intentional misrepresentation; (6) conversion; (7) unconscionability;[2] (8) a request for injunctive relief prohibiting Mr. Hlad from making statements that he was not paid (this count did not seek damages); and (9) negligence (defective workmanship).[3]

Mr. Hlad had a CGL policy with Nationwide at all times relevant to this case.[4] The CGL policy provided two pertinent types of coverage: Coverage A, which

---

[1] An alleged breach of the covenant of good faith and fair dealing is not a separate cause of action from a breach of contract claim. *See Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W.Va. 577, 587, 746 S.E.2d 568, 578 (2013) (Breach of the common law duty of good faith sounds in breach of contract and is not an independent claim.).

[2] The Nelsons allege that their contract with Mr. Hlad was procedurally unconscionable. However, unconscionability is a defense to enforcement of a contract, not a cause of action.

[3] In their original complaint, the Nelsons did not allege that Mr. Hlad was negligent in constructing their house. They amended their complaint to include the negligence claim. For purposes of this appeal, we examine the Nelsons' amended complaint.

[4] Technically, Mr. Hlad had two CGL policies with Nationwide while he worked on the Nelsons' house. One policy was in effect from February 2009 to Feburary 2010. The other was in effect from February 2010 to February 2011. Both of these policies are identical in terms of coverage. Therefore, we refer to them collectively, as "the CGL policy."

We also note that Mr. Hlad's CGL policies were accompanied by umbrella policies which promised to indemnify for damages exceeding the CGL coverage. The circuit court's order and Nationwide's petition for writ of prohibition only pertain to Mr. Hlad's CGL policy with Nationwide. We limit our discussion to the CGL policy.

insures against "property damage and bodily injury liability" caused by an "occurrence," (otherwise known as an accident); and Coverage B, which insures against "personal and advertising injury." Both Coverage A and Coverage B are subject to exclusions in the CGL policy.

Although the Nelsons' claims against Mr. Hlad were primarily for breach of contract and intentional torts, Nationwide provided Mr. Hlad a defense in the underlying lawsuit under a reservation of rights.[5] Nationwide also intervened in the lawsuit and filed a complaint for declaratory relief to determine whether it has a duty to defend or indemnify Mr. Hlad.

In the meantime, Nationwide served the Nelsons with interrogatories regarding the defective workmanship claim. The Nelsons did not answer or object to the interrogatories.[6] When Nationwide reminded the Nelsons that answers to its interrogatories were due, counsel for the Nelsons responded in a letter that they would not comply with Nationwide's request for information. The Nelsons' counsel then demanded information about a Nationwide settlement in a separate, unrelated case and requested that two of Nationwide's agents attend a deposition at a date unilaterally set by him. The letter continued: "Upon receipt of the same, I will be happy to respond to your

---

[5] A reservation of rights is "[a] notice of an insurer's intention not to waive its contractual rights to contest coverage or to apply an exclusion that negates an insured's claim." Black's Law Dictionary 1422 (9th ed. 2009).

[6] West Virginia Rule of Civil Procedure 33(b)(3)[2001], requires parties to answer or object to an interrogatory within thirty days of being served.

4

discovery requests." Thereafter, Nationwide filed a motion to compel the Nelsons to answer its interrogatories and a motion for a protective order regarding the Nelsons' demands. The circuit court has not ruled on these motions.

The circuit court denied Nationwide's request for declaratory relief in an order dated March 16, 2015. In its order, the circuit court noted that defective workmanship constitutes an "occurrence," and the Nelsons alleged that Mr. Hlad constructed their house in a defective manner.[7] It then concluded:

> [T]he Nelsons have asserted a claim for damages that are not foreign to the risks insured against by Nationwide's CGL policies, and Nationwide has a duty to indemnify [Mr. Hlad] for *any damages that may be recovered* against [Mr. Hlad], and Nationwide may not withdraw from its defense of the insured in this case.

(Emphasis added). Nationwide then petitioned this Court for a writ of prohibition.

## II.
## STANDARD OF REVIEW

When considering a petition for a writ of prohibition, we have held:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower

---

[7] *See* Syl. Pt. 6, *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 231 W.Va. 470, 745 S.E.2d 508 (2013).

tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, *it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.*

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996) (emphasis added).

Nationwide contends that the circuit court clearly erred by finding that its CGL policy covered the Nelsons' claims against Mr. Hlad. We have held: "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. Pt. 1, *Tennant v. Smallwood*, 211 W.Va. 703, 568 S.E.2d 10 (2002).

## III.
## ANALYSIS

The circuit court held that Nationwide has a duty to provide coverage, defend, and indemnify Mr. Hlad for "any damages that may be recovered against [him]" in the underlying lawsuit. Nationwide argues the circuit court clearly erred by failing to consider (1) all relevant factors as to whether the Nelsons' claims against Mr. Hlad triggered coverage under the CGL policy, and (2) whether any exclusions precluded coverage. Thus, Nationwide asserts that it is entitled to relief in prohibition based on the

6

third *Hoover* factor. We find that the damages sought by the Nelsons were not covered by Nationwide's CGL policy because they did not trigger coverage or were precluded by clear and unambiguous exclusions. Accordingly, we grant Nationwide's requested writ of prohibition and hold that the circuit court clearly erred as a matter of law by finding that Nationwide is required to defend Mr. Hlad and indemnify him for any damages recovered against him by the Nelsons.

## A. Triggering coverage under Nationwide's CGL policy

The circuit court found that Nationwide's CGL policy covered all nine counts in the underlying lawsuit based solely on the fact that one of those counts alleged defective workmanship. The circuit court's order stated: "defective workmanship . . . is an 'occurrence' under a policy of commercial general liability insurance." The circuit court continued: "[t]he Nelsons allege . . . defective construction and completion of their home. . . . The Court FINDS that the Nelsons have asserted a claim for damages that are not foreign to the risks insured against by Nationwide's CGL policies[.]"

Nationwide argues that eight of the nine counts asserted against Mr. Hlad (*i.e.* those alleging breach of contract or intentional torts) were not caused by his defective workmanship. Therefore, the mere fact that coverage was triggered on the ninth count (the defective workmanship claim), does not mean that coverage was triggered on the other eight counts in the underlying lawsuit. Nationwide further contends that because these eight counts did not trigger coverage, it has no duty to indemnify Mr. Hlad for the damages that may be recovered on those counts.

7

We agree that Nationwide's duty to indemnify Mr. Hlad is limited only to those claims that triggered coverage. It is well established that "an insurer is only obligated to indemnify its insured for claims that *actually* fall within the terms of the policy." *See* 3 JEFFREY E. THOMAS, NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 18-1 (LexisNexis). *See also Perdue Farms, Inc. v. Travelers Cas. & Sur. Co.*, 448 F.3d 252, 259 (4th Cir. 2006) ("[A]n insurer has no obligation to remunerate its insured for claims not covered under its policy."). In determining whether a claim falls within the terms of a CGL policy, we give effect to the policy's clear and unambiguous terms. *See* Syl. *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970) ("Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.").

By contrast, an insurer's duty to provide its insured a defense is broader than the duty to indemnify. Allegations in a complaint against an insured trigger the duty to defend if they are "reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policies." Syl. Pt. 3, in part, *Bruceton Bank v. U.S. Fid & Guar. Ins. Co.*, 199 W.Va. 548, 486 S..E.2d 19 (1997). Furthermore, "if part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims[.]" *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 378, 376 S.E.2d 581, 584 (1988).

Therefore, an insurer's duty to indemnify its insured under a CGL policy is narrower than its duty to provide a defense. In assessing whether an insurer is obligated

8

to indemnify under a CGL policy, each claim is examined individually.  When only some, but not all, of the claims in a lawsuit fall within the terms of a CGL policy, the insurer is not obligated to indemnify its insured for those claims that do not fall within the CGL policy's terms.  Thus, in finding that Nationwide has a duty to indemnify Mr. Hlad for all nine counts in the underlying lawsuit based solely on the defective workmanship claim, the circuit court incorrectly treated the duty to indemnify the same as the duty to defend.  With these principles in mind, we now turn to Nationwide's CGL policy.

Nationwide's CGL policy provides two types of coverage that are pertinent to this petition: Coverage A and Coverage B.  Under Coverage A, Nationwide promised to indemnify Mr. Hlad for sums that he becomes obligated to pay because of "property damage" or "bodily injury" caused by an "occurrence," otherwise known as an "accident."  Under Coverage B, Nationwide promised to indemnify Mr. Hlad for "personal and advertising injury," which includes injury caused by "oral or written publication . . .that slanders or libels a person[.]"

Therefore, in determining whether the Nelsons' amended complaint triggered a duty under Nationwide's CGL policy to indemnify Mr. Hlad or provide him a defense, we are guided by the clear and unambiguous terms of the CGL policy in Coverage A and Coverage B.  Nationwide has a duty to indemnify Mr. Hlad for only those claims that are caused by an "occurrence" or that satisfy the CGL policy's definition of "personal and advertising injury."  Furthermore, for Nationwide to have a duty to provide a defense in the underlying lawsuit, at least one of the Nelsons' claims must be reasonably susceptible of coverage under the CGL policy.

9

### 1. *Coverage A*

Coverage A of Nationwide's CGL policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . [W]e will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . . *This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence*[.]"

(Emphasis added). Therefore, to establish that Nationwide has a duty to defend or indemnify Mr. Hlad under Coverage A, there must be proof that the damages the Nelsons suffered were caused by an "occurrence." *See Cherrington v. Erie Ins. Prop. & Cas. Co.*, 231 W.Va. 470, 482, 745 S.E.2d 508, 520 (2013) ("In order for a claim to be covered by the subject CGL policy, it must . . . [have] been caused by an 'occurrence.'").

Nationwide's CGL policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." We have defined "accident" as such: "In determining whether under a liability insurance policy an occurrence was or was not an 'accident'—or was or was not deliberate, intentional, expected, desired, or foreseen—primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue." Syl., *Columbia Cas. Co. v. Westfield Ins. Co.*, 217 W.Va. 250, 617 S.E.2d 797 (2005). Furthermore, "'[a]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage.'" *State Bancorp, Inc. v. U.S.*

10

*Fid. & Guar. Ins. Co.*, 199 W.Va. 99, 105, 483 S.E.2d 228, 234 (1997) (quoting *Harrison Plumbing & Heating, Inc. v. N.H. Ins. Group*, 37 Wash. Ct. App. 621, 624, 681 P.2d 875, 878 (1984)).

The Nelsons' amended complaint contained nine counts against Mr. Hlad: (1) breach of contract by failing to complete their house on time; (2) breach of the covenant of good faith and fair dealing; (3) defamation in knowingly making false statements that the Nelsons failed to pay him, even though Mr. Hlad had withdrawn $257,200 from their construction loan account; (4) unfair and deceptive acts; (5) fraud and intentional misrepresentation in inducing the Nelsons to contract with him; (6) conversion by withdrawing funds from the Nelsons' construction loan account without complying with the contract; (7) procedural unconscionability in forming the contract; (8) a request for injunctive relief prohibiting Mr. Hlad from making false statements that he was not paid; and (9) negligence in defectively constructing their house (defective workmanship).

The first eight counts of the amended complaint alleged misconduct that is either intentional or contractual in nature. Intentional misconduct is not an "accident" under the terms of the CGL policy. Furthermore, this Court has recognized that it is against public policy to permit insurance coverage for intentional torts. *See Leeber*, 180 W.Va. at 380, 376 S.E.2d at 586. As to the Nelsons' claims for breach of contract, we have held: "[A] breach of contract . . . is not an event that occurs by chance or arises from unknown causes, and therefore, is not an 'occurrence' as that word is defined in . . . CGL

11

policies." *State Bancorp, Inc.*, 199 W.Va. at 105, 483 S.E.2d at 234.[8] Accordingly, to the extent that the amended complaint alleged that Mr. Hlad's actions were intentional misconduct or purely breach of contract, his actions are not "occurrences" as defined by Nationwide's CGL policy and do not trigger coverage under Coverage A.

The ninth count of the amended complaint alleged that Mr. Hlad negligently constructed the Nelsons' house. As to defective construction of a house, we have held: "[d]efective workmanship causing bodily injury or property damage is an 'occurrence' under a policy of commercial general liability insurance." Syl. Pt. 6, in part, *Cherrington*, 231 W.Va. at 478, 745 S.E.2d at 521. According to the Nelsons' complaint, Mr. Hlad negligently built their house, and thereby "adversely impacted the structural integrity of [their] home, [and caused] cracks in the foundation of [their] home and water leaks and structural and other property damages[.]" The Nelsons also assert that as a result of Mr. Hlad's defective work, they had to replace "various doors, windows, walls, lights;" "vinyl siding and flashing;" "kitchen cabinets, tiles, and appliances;" etc. These damages were caused by an "occurrence."

---

[8] In regards to claims for breach of contract, we caution that "the same act may constitute both a breach of contract and a tort." *Vandenberg v. Superior Court*, 21 Cal 4th 815, 838, 982 P.2d. 229, 245 (1999). Thus, in determining whether a claim is covered under a CGL policy, courts must not focus exclusively on the legal theory asserted by the claimant. Rather, the relevant considerations are: "the nature of [the] property, the injury, and the risk that caused the injury, in light of the particular provisions of each applicable insurance policy." *Id.*, 982 P.2d at 234-44.

Therefore, only those alleged damages caused by Mr. Hlad's defective workmanship were caused by an "occurrence" as is required to trigger coverage under Coverage A of Nationwide's CGL policy.

### 2. Coverage B

Nationwide's CGL policy also provided Mr. Hlad coverage for "personal and advertising injury" under Coverage B. The CGL policy defines personal and advertising injury as: "injury . . . arising out of one or more of the following offenses: . . . d. Oral or written publication . . . of material that slanders or libels a person[.]" This Court has held that defamation satisfies this definition of "personal and advertising injury," and thus, triggers coverage under Coverage B of a CGL policy. *Butts v. Royal Vendors, Inc.*, 202 W.Va. 448, 453, 504 S.E.2d 911, 916 (1998).

The Nelsons allege that Mr. Hlad defamed them by falsely stating to subcontractors and suppliers that he was unable to pay them because the Nelsons failed to provide money to do so, thus causing the subcontractors and suppliers to place a lien on the Nelsons' house. Therefore, the Nelsons' claim against Mr. Hlad for defamation triggers coverage under the CGL policy because it falls within the terms of Coverage B.

### B. Exclusions under Nationwide's CGL policy

However, the mere fact that coverage is triggered under a CGL policy does not end our inquiry. Rather, Nationwide must be given an opportunity to prove that an exclusion to coverage applies. *See* Syl. Pt. 1, *Jarvis v. Penn. Cas. Co.*, 129 W.Va. 291, 40 S.E.2d 308 (1946) ("Where . . . [the] insured has made out a prima facie case of loss within the coverage provided by the policy, the burden is upon the insurer to prove . . .

13

that the loss is one for which the insurer is not liable because it comes within an exception in the policy.").

Therefore, we now turn to whether the two counts that triggered coverage (defective workmanship under Coverage A and defamation under Coverage B) are precluded by exclusions in the CGL policy.

### *1. Defective workmanship under Coverage A*

Nationwide claims that the following exclusions preclude coverage for the Nelsons' defective workmanship claim, which exclude:

**l. Damage To Your Work**:

"property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**:

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

14

(Boldface added) (collectively, hereinafter "your-work" exclusion).[9]

We recently upheld the validity of the "your-work" exclusion and held that it precludes coverage for the defective workmanship of a contractor, but not the defective workmanship of a subcontractor. *Cherrington*, 231 W.Va. at 487-88, 745 S.E.2d at 525-26. Therefore, whether this exclusion applies to the underlying lawsuit depends on whether Mr. Hlad himself (as opposed to his subcontractors) performed the allegedly deficient work.

We have held: "An insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion." Syl. Pt. 7, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987) *overruled on other grounds by Potesta v. U.S. Fid. & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998).

However, a plaintiff seeking coverage under an insurance policy plays a major role in determining whether an exclusion applies. We have held: "[I]ncluded in the consideration of whether the insurer has a duty to defend is whether *the allegations in the complaint . . .* are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policies." Syl. Pt. 3, in part, *Bruceton Bank*, 199 W.Va. 548, 486 S.E.2d 19 (emphasis added). Likewise,

---

[9] Nationwide also argues that another exclusion, "Damage to Property" precludes coverage. Because we find that coverage is precluded under the "your-work" exclusion, we need not address this additional exclusion.

15

> [A]n insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers. . . . If the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy.

*State Auto Mut. Ins. Co. v. Alpha Eng'g Serv., Inc.*, 208 W.Va. 713, 716, 542 S.E.2d 876, 879 (2000).

This rule applies with equal force to determining whether an exclusion applies as it does to determining whether coverage was triggered. *See W.Va. Fire & Cas. Co. v. Stanley*, 216 W.Va. 40, 602 S.E.2d 483 (2004) ("[I]n order to determine whether there is coverage under the policy at issue, we look to the claims set forth in the underlying complaint to see if they, without amendment, may impose liability for risks not precluded by [an] . . . exclusion."). *See also Alpha Eng'g Serv. Co.*, 208 W.Va. at 717, 542 S.E.2d at 880 (holding liability insurer established that "professional services" exclusion applied because the exclusion's language covered the allegations in the plaintiff's complaint).

Therefore, our question becomes whether the Nelsons' amended complaint seeks damages for the defective workmanship of Mr. Hlad's subcontractors. The Nelsons' amended complaint alleges that "Mr. Hlad, individually and d/b/a Allstate Construction," was negligent in selecting the location for the foundation of the house; in framing the house; and in installing water drainage systems, vinyl siding, doors, kitchen appliances, etc. The complaint does not allege, or even imply, that a subcontractor

16

performed any of the allegedly defective work.[10]  Furthermore, the Nelsons do not claim that Mr. Hlad was vicariously liable for any misconduct by a subcontractor or that he negligently supervised the subcontractors' work on the Nelsons' house.  Finally, and with little surprise, the Nelsons did not name a subcontractor as a defendant.  Accordingly, it is clear that the Nelsons' amended complaint seeks damages exclusively for Mr. Hlad's defective workmanship, not his subcontractors.

We recognize that "[w]hen a complaint is filed against an insured, an insurer must look beyond the bare allegations contained in the third party's pleadings and conduct a reasonable inquiry into the facts in order to ascertain whether the claims asserted may come within the scope of the coverage that the insurer is obligated to provide."  Syl., *Farmers & Mech. Mut. Fire Ins. Co. of W.Va. v. Hutzler*, 191 W.Va. 559, 447 S.E.2d 22 (1994).  Pursuant to this duty, Nationwide expended reasonable effort to ascertain if the Nelsons had evidence that any defective workmanship was performed by subcontractors.  The Nelsons refused to reply to Nationwide's requests for information in its interrogatories despite their obligation to do so.

Rather than provide Nationwide the requested information, the Nelsons argue before this Court that the "your-work" exclusion does not preclude work done by Mr. Hlad.  Moreover, they claim it does not matter who performed the allegedly deficient work.  However, we have stated: "[the your-work exclusion] excludes coverage for the

---

[10]  We also note that Mr. Hlad did not indicate that a subcontractor performed any of the allegedly defective work.

17

work of [the insured contractor].").  *Cherrington*, 231 W.Va. at 486, 745 S.E.2d at 524. The "your-work" exclusion leaves no ambiguity as to whether the insured contractor's work is excluded, and we give full effect to the plain meaning of clear and unambiguous exclusions.  *See Alpha Eng'g Serv. Inc.*, 208 W.Va. at 716, 542 S.E.2d at 879.

Nationwide's CGL policy precludes coverage for claims caused by Mr. Hlad's own work.  The Nelsons seek damages for Mr. Hlad's own defective work, so the "your-work" exclusion applies to the underlying lawsuit.  Therefore, the Nelsons' defective workmanship claim is not covered under Nationwide's CGL policy.

### 2. Defamation under Coverage B

The Nelsons' defamation claim, which triggered coverage for "personal and advertising injury," is also precluded by an exclusion.  Coverage B provides: "This insurance does not apply to: . . . 'Personal and advertising injury' arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."[11]  This Court has upheld and applied this exclusion to preclude coverage in *State Bancorp, Inc.*, 199 W.Va. at 109, 483 S.E.2d at 238 ("Therefore, we conclude that any 'personal injury' inflicted by the [insurers] by the submission of the above letter was *intentional* and, is therefore, expressly excluded from coverage[.]").

---

[11] The elements of defamation do not require the defendant to have known that the defamatory statement was false.  All that is required as to the defendant's intent is "negligence on the part of the publisher[.]"  *Butts*, 202 W.Va. at 453, 504 S.E.2d at 916.

18

The Nelsons claimed in their amended complaint that: "Defendant Hlad, individually and d/b/a/ Allstate Construction, and his employee(s) have made these [defamatory] statements to suppliers and subcontractors *knowing at the time that the statements were false*." (Emphasis added). Accordingly, the Nelsons' allegations for defamation clearly fall within the terms of an exclusion to coverage, and thus, the defamation claim is not covered under Nationwide's CGL policy.

## IV.
## CONCLUSION

Therefore, only two of the nine counts alleged in the Nelsons' amended complaint may be read to have triggered coverage under the CGL policy. However, coverage for both of those counts is precluded by clear and unambiguous exclusions. Because no claim in the underlying lawsuit is reasonably susceptible of an interpretation suggesting coverage by the CGL policy, we find that Nationwide has no duty to provide coverage, defend, or indemnify Mr. Hlad in the underlying lawsuit. Accordingly, we grant Nationwide's requested writ of prohibition and halt enforcement of the circuit court's March 16, 2015 order.

**Writ Granted.**

19