# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2017 Term

**FILED**
**October 19, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0596

**FIRST MERCURY INSURANCE COMPANY, INC.,**
Defendant Below, Petitioner

**V.**

**JEFFREY RUSSELL AND ANITA RUSSELL,**
Plaintiffs Below, Respondents,
and
**KIMES STEEL, INC.,**
Defendant Below, Respondent

Appeal from the Circuit Court of Mason County
Honorable David W. Nibert, Judge
Civil Action No. 14-C-18
AFFIRMED

Submitted: September 12, 2017
Filed:  October 19, 2017

Don C. A. Parker
Charity K. Lawrence
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Attorneys for the Petitioner,
First Mercury Insurance Company

Brent K. Kesner
Ernest G. Hentschel, II
Kesner & Kesner, PLLC
Charleston, West Virginia
Attorneys for the Respondents,
Jeffrey and Anita Russell

**Kevin A. Nelson**
**Ashley W. French**
**Dinsmore & Shohl, LLP**
**Charleston, West Virginia**
**Attorneys for the Respondent,**
**Kimes Steel, Inc.**

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "A circuit court's entry of summary judgment is reviewed *de novo*."
Syllabus point 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      """A motion for summary judgment should be granted only when it
is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is
not desirable to clarify the application of the law."  Syllabus Point 3, *Aetna Casualty &
Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770
(1963).'  Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d
247 (1992)."  Syllabus point 2, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

3.      "The interpretation of an insurance contract, including the question
of whether the contract is ambiguous, is a legal determination that, like a lower court's
grant of summary judgment, shall be reviewed *de novo* on appeal."  Syllabus point 2,
*Riffe v. Home Finders Associates, Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999).

4.      "Employers' liability insurance applies to actions brought by an
employee against an employer, when the employer and the employee are not entitled to
the benefits and protections under any workers' compensation law, or when, even though

covered by a workers' compensation law, the employee has a right to bring an action for common law damages against the employer." Syllabus point 3, *Erie Insurance Property & Casualty Co. v. Stage Show Pizza JTS, Inc.,* 210 W. Va. 63, 553 S.E.2d 257 (2001).

5.      "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syllabus point 4, *National Mutual Insurance Co. v. McMahon & Sons, Inc.,* 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Parsons v. Halliburton Energy Services, Inc.,* 237 W. Va. 138, 785 S.E.2d 844 (2016).

6.      "Where ambiguous policy provisions would largely nullify the purpose of indemnifying the insured, the application of those provisions will be severely restricted." Syllabus point 9, *National Mutual Insurance Co. v. McMahon & Sons, Inc.,* 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Parsons v. Halliburton Energy Services, Inc.,* 237 W. Va. 138, 785 S.E.2d 844 (2016).

7.      "Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syllabus point 5, *National Mutual Insurance Co. v. McMahon & Sons, Inc.,*

177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Parsons v. Halliburton Energy Services, Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016).

**Davis, Justice:**

This appeal was brought by the Petitioner, First Mercury Insurance Company, Inc. ("First Mercury"), defendant below, from an order of the Circuit Court of Mason County that denied First Mercury's motion for partial summary judgment and, in turn, granted partial summary judgment as to coverage to Respondents Jeffrey Russell and Anita Russell ("Mr. Russell" or "the Russells"), plaintiffs below, and Respondent Kimes Steel, Inc. ("Kimes Steel"), defendant below. The dispositive issue herein is whether coverage exists for a statutory deliberate intent action when the employer's commercial general liability policy is amended by an endorsement that includes a "Stop Gap – Employers Liability Coverage Endorsement – West Virginia" that expressly provides coverage for bodily injury to employees, as well as an exclusion for statutory deliberate intent claims. After careful review of the circuit court's order, the briefs, the record submitted on appeal, and the oral arguments of the parties, we find the policy at issue in this case to be internally inconsistent and therefore ambiguous. Accordingly, we interpret the policy in favor of the insured and affirm the circuit court's partial summary judgment rulings.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

In 2012, Kimes Steel sought to purchase various types of insurance coverage in order to meet the insurance requirements for a potential client contract with James River Coal. Specifically, among other things, James River Coal required $1,000,000.00 of coverage for commercial general liability ("CGL") (combined single limit) and employer's liability (per accident), and $5,000,000.00 of excess liability coverage. Mr. Shannon Kimes, the principal of Kimes Steel, worked with an independent insurance agent who solicited quotes for the required insurance coverage based upon a list provided by James River Coal.[1] Ultimately, First Mercury, a surplus lines carrier,[2] responded to the solicitation by submitting a bid to provide the coverage required by James River Coal.

Thereafter, Kimes Steel purchased two insurance policies from First Mercury. The first policy purchased from First Mercury provides primary CGL coverage.

---

[1]James River Coal also required workers' compensation coverage. Kimes Steel previously maintained a basic workers' compensation and employer's liability insurance policy with BrickStreet Mutual Insurance Company ("BrickStreet"). In order to comply with James River Coal's liability requirements as to workers' compensation, Kimes Steel increased its limits of liability with BrickStreet.

[2]A surplus lines carrier is an insurance company that is not admitted or not licensed to engage in insurance business in West Virginia. *See* W. Va. Code §§ 33-12C-3(e), (p), and (w) (2011) (Repl. Vol. 2017).

The second policy purchased provides excess coverage. The First Mercury CGL policy contains a standard exclusion for employer's liability for injuries to employees. However, the standard exclusion is modified by an endorsement identified as "Stop Gap – Employers Liability Coverage Endorsement – West Virginia" ("Stop Gap").[3] The First Mercury excess policy includes a standard "follow form" provision, which incorporates the terms of the underlying policy.

The two First Mercury policies were in place when Mr. Russell was involved in a workplace accident at Kimes Steel on May 3, 2013. The accident resulted in severe injuries to Mr. Russell's dominant hand and the amputation of a finger. On February 4, 2014, the Russells filed their complaint alleging that Kimes Steel acted with "deliberate intention" as defined in W. Va. Code § 23-4-2 (2005) (Repl. Vol. 2010).[4] The Russells alleged that Kimes Steel required its employee, Jeffrey Russell, to perform his job duties without required safety equipment, instructions, and precautions for working

---

[3]In fact, the Kimes Steel application for the CGL policy specifically requested stop gap coverage.

[4]Pursuant to W. Va. Code § 23-4-2(c) (2005) (Repl. Vol. 2010), a cause of action may be had against an employer "[i]f injury or death result to any employee from the deliberate intention of his or her employer to produce the injury or death. . . ." The statutory elements required to prevail in a claim for deliberate intent are set out in W. Va. Code § 23-4-2(d)(2)(ii). This statute was amended effective June 12, 2015. Thus, we cite to the statute in effect at the time of Mr. Russell's injury in 2013.

3

with table saws, and subjected him to a specific unsafe working condition that presented a high degree of risk and strong probability of serious injury or death.

First Mercury issued a denial of coverage letter to Kimes Steel on May 5, 2014. The letter informed Kimes Steel that First Mercury would "not provide . . . a legal defense to the lawsuit, nor [would] it indemnify Kimes Steel as to any damages for which Kimes Steel may be liable to Jeffrey or Anita Russell." First Mercury also filed a declaratory judgment action in the United States District Court for the Southern District of West Virginia seeking a declaration that the policies provide no coverage for the Russells' claims. The declaratory judgment action was dismissed by the district court. Thereafter, in June 2014, the Russells amended their complaint by adding a declaratory judgment claim against First Mercury alleging that First Mercury is obligated to provide a defense and indemnification to Kimes Steel under the subject insurance policies. In October 2014, Kimes Steel filed a cross-claim against First Mercury asserting breach of contract and bad faith arising from First Mercury's denial of coverage to Kimes Steel with respect to the Russells' claims.

On March 18, 2015, the circuit court entered an agreed order vacating a previously entered scheduling order and staying discovery of the underlying Russell tort claim allegations pending resolution of the coverage issues. Subsequently, First Mercury

4

moved for partial summary judgment on the coverage issues. Kimes Steel and the Russells responded by also filing separate motions for partial summary judgment as to the coverage issues.

Following briefing and arguments, the circuit court entered its May 18, 2016, "Order Denying Defendant First Mercury Insurance Company's Motion for Partial Summary Judgment and Granting Plaintiffs' Cross-Motion and Defendant Kimes Steel's Motion for Partial Summary Judgment on Coverage Issues." The circuit court's order can be summarized as finding coverage based upon its conclusion that the Stop Gap endorsement language is ambiguous with respect to covering the Russells' deliberate intent action. Additionally, the circuit court concluded that Kimes Steel had a reasonable expectation of coverage for the Russells' claims, that the policy language rendered the stop gap coverage illusory, that First Mercury was estopped from denying coverage, and, further, that First Mercury owed a duty to defend Kimes Steel. It is from this order that First Mercury now appeals.

## II.

### STANDARD OF REVIEW

First Mercury appeals the order of the circuit court granting partial summary judgment in favor of the Russells and Kimes Steel and denying First Mercury's

5

motion for partial summary judgment.  It is well settled that "[a] circuit court's entry of summary judgment is reviewed *de novo*."  Syl. pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994).  In undertaking our *de novo* review, we apply the same standard for granting summary judgment that is applied by the circuit court:

> "'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.'  Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963)."  Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter*, 192 W. Va. 189, 451 S.E.2d 755.

Additionally, it is well recognized that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgment, shall be reviewed *de novo* on appeal."  Syl. pt. 2, *Riffe v. Home Finders Assocs. Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999). Mindful of the *de novo* standard governing our review, we proceed to consider the substantive issues raised.

6

## III.

## DISCUSSION

First Mercury advances four assignments of error challenging the circuit court's conclusion that the Stop Gap endorsement and related exclusion were ambiguous. On the other hand, the Russells and Kimes Steel assert that the circuit court properly found First Mercury's policy to be inherently ambiguous. Accordingly, this appeal is resolved by considering the policy language.[5]

The First Mercury CGL policy issued to Kimes Steel contains a typical insuring agreement accompanied by an exclusion of coverage for bodily injury to an employee.[6] Neither of these provisions is disputed in this appeal. This case turns on a

---

[5]First Mercury raises additional assignments challenging the circuit court's rulings pertaining to the doctrine of reasonable expectations, illusory coverage, estoppel, and First Mercury's duty to defend. Because this appeal is resolved by the policy language, it is unnecessary to address these issues. *See infra* note 8.

[6]"Section I" of the First Mercury CGL policy, under the heading "Coverage A Bodily Injury and Property Damage Liability," provides:

> **1.   Insuring Agreement**
> a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property

(continued...)

7

stop gap endorsement appended to the CGL policy and titled "Stop Gap – Employers

Liability Coverage Endorsement – West Virginia." The Stop Gap endorsement modifies

the exclusion of bodily injury coverage to an employee that is contained in the First

Mercury CGL policy. The Stop Gap endorsement provides, in relevant part:

> **A.** The following is added to Section I – Coverages:
>
> **COVERAGE – STOP GAP – EMPLOYERS LIABILITY**
>
> **1.     Insuring Agreement**
>
> > a.      We will pay those sums that the insured becomes legally obligated by West Virginia Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. . . .

---

[6](...continued)
> damage" to which this insurance does not apply. . . .

The policy goes on to set out the following exclusion:

> **2.     Exclusions**
> This insurance does not apply to:
> . . . .
> **e.     Employer's Liability**
> "Bodily injury" to:
> (1)     An "employee" of the insured arising out of and in the course of:
> > (a)     Employment by the insured; or
> > (b)     Performing duties related to the conduct of the insured's business[.]

8

To put into perspective the Stop Gap endorsement set out above, it is important to first understand the meaning this Court has ascribed to the term "stop gap" coverage. This Court addressed that term in *Erie Insurance Property & Casualty Co. v. Stage Show Pizza, JTS, Inc*., 210 W. Va. 63, 553 S.E.2d 257 (2001), wherein the Court observed that, "[i]n many states, insurance companies offer businesses three types of insurance coverage: commercial general liability coverage; workers' compensation coverage; and 'stop gap' employers' liability coverage." *Id*. at 67, 553 S.E.2d at 261. In explaining the three coverage types, the Court noted that a CGL policy protects a business against a variety of liability claims but typically does not provide coverage for employee bodily injury arising out of employment. *Id*. As to workers' compensation coverage, the Court observed that "[w]orkers' compensation coverage is designed to release both an employer and its employees from common-law rules of liability and damage, protect an employer from expensive and unpredictable litigation, and provide compensation for injuries to employees without the burdensome requirements of proving common-law negligence." *Id*. at 68, 553 S.E.2d at 262 (citing *Jones v. Laird Found., Inc*., 156 W. Va. 479, 489, 195 S.E.2d 821, 827 (1973) (Sprouse, J., concurring)). Finally, the Court in *Stage Show Pizza* recognized that "[b]etween these two types of protection lies a 'gap' in coverage. In this gap are claims made against a business by injured employees whose claims are not generally compensable under the workers' compensation system." 210 W. Va. at 68, 553 S.E.2d at 262. Significantly, the Court described employers' liability

9

stop gap coverage as the gap filler intended for the purpose of providing coverage for employers when employees are able to bring an action for injury despite workers' compensation immunity. *Id.* Pertinent to the instant case, the Court expressly held:

> Employers' liability insurance applies to actions brought by an employee against an employer, when the employer and the employee are not entitled to the benefits and protections under any workers' compensation law, or when, even though covered by a workers' compensation law, the employee has a right to bring an action for common law damages against the employer.

Syl. pt. 3, *Stage Show Pizza*, 210 W. Va. 63, 553 S.E.2d 257. *See also Luikart v. Valley Brook Concrete & Supply, Inc.*, 216 W. Va. 748, 754, 613 S.E.2d 896, 902 (2005) (per curiam) (recognizing "stop gap employers' liability policy exists to cover 'claims made against a business by injured employees whose claims are not generally compensable under the workers' compensation system'" (quoting *Stage Show Pizza*, 210 W. Va. at 68, 553 S.E.2d at 262)).

With this understanding of the meaning of stop gap coverage, we consider the language of the First Mercury Stop Gap endorsement. We first note that the coverage endorsement, which undisputedly modifies the insuring agreement in the First Mercury CGL policy, expressly utilizes the term "Stop Gap" in its heading: "Coverage – Stop Gap – Employers Liability." Pursuant to West Virginia law as described above, the utilization of the term "Stop Gap" in this heading plainly indicates that the policy provides Kimes

10

Steel with coverage for a deliberate intent action brought by an employee.  However, the language that follows attempts to limit coverage to "'bodily injury *by accident*' or 'bodily injury by disease' to your 'employee' to which this insurance applies. . . ."  (Emphasis added).  Thus, the more prominently displayed heading to this provision conveys a clear, yet different, message than the policy language that follows.

The heading indicates that the policy provides stop gap coverage, which, under West Virginia law, plainly means coverage for "claims made against a business by injured employees whose claims are not generally compensable under the workers' compensation system."  *Stage Show Pizza*, 210 W. Va. at 68, 553 S.E.2d at 262.  Nevertheless, the policy language purports to limit employee claims to only those arising "by accident" or "disease."  Under these circumstances, we find this portion of the Stop Gap endorsement to be ambiguous.  Accordingly, this provision must be interpreted in favor of Kimes Steel, and we find that it provides coverage for the Russells' deliberate intent claims.  "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured."  Syl. pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016).  *Accord Riffe v. Home Finders*

11

*Assocs., Inc.*, 205 W. Va. 216, 221, 517 S.E.2d 313, 318 (1999). However, our analysis does not end here.

The Stop Gap endorsement in the First Mercury policy also contains its own exclusionary language providing, in relevant part in Exclusion l, as follows:

> **2.   Exclusions**
>
> This insurance does not apply to:
>
> . . . .
>
> **l.   West Virginia Workers Compensation Law, Sect. 23-4-2**
>
> > "Bodily injury by accident" or "bodily injury by disease" caused by any action determined to be of deliberate intention as specified under West Virginia Workers Compensation Law, Sect. 23-4-2.

As First Mercury correctly notes, the case of *West Virginia Employers' Mutual Insurance Co. v. Summit Point Raceway Associates, Inc.*, 228 W. Va. 360, 719 S.E.2d 830 (2011), is directly on point with a similar exclusion and unquestionably controls our analysis of this language. In *Summit Point*, this Court considered the following exclusionary language:

> C. Exclusions
>
> This insurance does not cover

> 5.  Bodily injury caused by your intentional,
> malicious or deliberate act, whether or not the act was
> intended to cause injury to the employee injured, or
> whether or not you had actual knowledge that an injury
> was certain to occur, or any bodily injury for which
> you are liable arising out of West Virginia Annotated
> Code § 23-4-2.

*Id.*, 228 W. Va. at 372, 719 S.E.2d at 842.  The *Summit Point* Court first acknowledged

West Virginia law pertaining to exclusionary clauses.  In this regard, it has been

established that

> [a]n insurer wishing to avoid liability on a policy
> purporting to give general or comprehensive coverage must
> make exclusionary clauses conspicuous, plain, and clear,
> placing them in such a fashion as to make obvious their
> relationship to other policy terms, and must bring such
> provisions to the attention of the insured.

Syl. pt. 6, *id.* (internal quotations and citations omitted).  With respect to the exclusionary

language at issue therein, the Court in *Summit Point* then concluded that the

> exclusion was conspicuous, plain, clear, and obvious in
> excluding coverage for deliberate intent actions.  By stating
> that the insurance did not cover "any bodily injury for which
> you are liable arising out of West Virginia Annotated Code §
> 23-4-2," it is clear that there was no coverage for deliberate
> intent liability. . . .

228 W. Va. at 373, 719 S.E.2d at 843.  Our examination of the similarly worded language

used in First Mercury's exclusion compels the same conclusion.  The language used in

First Mercury's Exclusion l, which expressly excludes coverage for "any action

determined to be of deliberate intention as specified under West Virginia Workers

13

Compensation Law, Sect. 23-4-2," is "plain, clear, and obvious in excluding coverage for deliberate intent actions." *Summit Point*, 228 W. Va. at 373, 719 S.E.2d at 843.

Thus, our analysis of the First Mercury policy issued to Kimes Steel reveals that it contains a Stop Gap endorsement that provides coverage for deliberate intent actions, and an accompanying plain and clear exclusion denying the very same coverage. The inclusion of both the Stop Gap endorsement and Exclusion l in the First Mercury policy creates an additional ambiguity.[7]  As noted above, "ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured."  Syl. pt. 4, in part, *McMahon & Sons, Inc.,* 177 W. Va. 734, 356 S.E.2d 488. Indeed, in *McMahon & Sons,* we concluded that "[w]here ambiguous policy provisions

---

[7]Thus, this case differs substantially from *Summit Point* to the extent that there was no ambiguity in the *Summit Point* policy. *See West Virginia Emp'rs' Mut. Ins. Co. v. Summit Point Raceway Assocs., Inc.*, 228 W. Va. 360, 372, 719 S.E.2d 830, 842 (2011) ("Nothing in the plain language quoted above leads to a reasonable conclusion that deliberate intent coverage is included in this policy.").  Furthermore, the language of the policy in *Summit Point* did not include any reference to stop gap coverage.  It was made clear that the employer in *Summit Point* did not pay a premium to obtain deliberate intent coverage and, therefore, did not have such coverage.  *Id.* at 371 n.14, 719 S.E.2d at 841 n.14 (stating "[i]t is undisputed that Summit Point did not have [deliberate intent] coverage, and Summit Point never paid any premiums to obtain such coverage" (emphasis added)).

Here, Kimes Steel sought coverage through an agent; First Mercury made an offer of CGL coverage with a Stop Gap endorsement; an application specifying stop gap coverage was completed; Kimes Steel paid the premium; and First Mercury accepted the premium.  Thus, it is clear from the parties' own actions that the terms of the policy were conflicting and ambiguous.

14

would largely nullify the purpose of indemnifying the insured, the application of those provisions will be severely restricted." Syl. pt. 9, *id.* Moreover, this Court specifically held that "[w]here the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. pt. 5, *id.* This circumstance compels the conclusion that the exclusionary language is inherently inconsistent with the Stop Gap endorsement providing coverage such that it nullifies the purpose of the policy endorsement and operates so as to defeat indemnification. *See, e.g., Cramer v. National Cas. Co.*, 690 F. App'x 135, 138 (4th Cir. 2017) ("[A]mbiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." (internal quotations and citation omitted)); *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995) (same).

By purporting to exclude deliberate intent actions from the Stop Gap endorsement, the First Mercury policy largely nullifies the purpose of the coverage, which is to fill the gap in the CGL policy and provide protection for employees' bodily injury claims. Such ambiguous policy language must be construed against the insurance company and in favor of the insured so as to support the purpose of indemnity. Syl. pts. 4 & 9, *McMahon & Sons, Inc.,* 177 W. Va. 734, 356 S.E.2d 488. Thus, we find that the First Mercury explicitly titled Stop Gap endorsement operates to provide coverage for the

15

deliberate intent claims of the Russells against Kimes Steel, and the conflicting exclusion may not be enforced.[8]

# IV.

# CONCLUSION

For the reasons stated, we affirm the circuit court's "Order Denying Defendant First Mercury Insurance Company's Motion for Partial Summary Judgment and Granting Plaintiffs' Cross-Motion and Defendant Kimes Steel's Motion for Partial Summary Judgment on Coverage Issues."

Affirmed.

---

[8]Because our analysis of the policy language compels us to affirm the circuit court's finding of coverage, it is unnecessary for us to address First Mercury's challenges to the circuit court's findings as to Kimes Steel's reasonable expectations of coverage, illusory coverage, or estoppel. Additionally, because we have found the subject policy provides coverage, there necessarily is a duty to defend on the part of First Mercury. *See State ex rel. Nationwide Mut. Ins. Co. v. Wilson*, 236 W. Va. 228, 234, 778 S.E.2d 677, 683 (2015) ("[A]n insurer's duty to indemnify its insured under a CGL policy is narrower than its duty to provide a defense.").

16